Jerry L. DALTON, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 18A02–9002–CR–00119.

Court of Appeals of Indiana, Second District.

Oct. 11, 1990.

Alan K. Wilson, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant Jerry L. Dalton (Dalton) appeals the revocation of his pro-

bation, claiming the evidence was insufficient to support the trial court's judgment.

We reverse and remand with instructions.

## FACTS

On October 15, 1986, in accordance with a plea agreement, Dalton pled guilty to charges of operating a vehicle while intoxicated,[1] a class A misdemeanor, and operating a vehicle with .10 percent or more alcohol in his blood,[2] a class C misdemeanor. In accepting his guilty plea, the trial court ordered Dalton to successfully complete an alcohol counseling program, and suspended his license for a six-month period to begin after a thirty-day administrative suspension. The trial court then withheld further judgment on the matter.

Upon later being informed that Dalton had failed to complete the program and pay certain fees, the court on February 22, 1989, determined Dalton had failed to comply with the terms of his plea agreement, and gave him a one-year sentence plus fined him $150. Subsequently, on April 11, 1989, the trial court suspended the balance of the sentence provided that Dalton re-enter and successfully complete an alcohol counseling program for a period of one year, maintain complete sobriety, have no further alcohol-related offenses for that period, and appear at each and every scheduled counseling and court appointment.

On July 14, 1989, the State moved that Dalton's probation be revoked for his failure to enter the alcohol counseling program and meet with court staff for scheduled appointments. This motion was amended on August 28, 1989, to include the allegation that Dalton had left the Salvation Army Adult Rehabilitation Center Program without permission from his probation officer and had failed to contact his probation officer. Following a "hearing" held on October 24, 1989, the court revoked Dalton's probation and ordered that he

serve the balance of the sentence. More detail as to this "hearing" will hereinafter appear. Dalton now appeals this judgment.

## ISSUE

Dalton states the issue in terms of whether the evidence is sufficient to support the revocation of his probation, but the issue is more properly stated as:

Did the trial court conduct the type of probation revocation hearing required by federal and Indiana law (Ind.Code 35–38–2–3) (1988) to afford Dalton his due process rights?

## DECISION

PARTIES' CONTENTIONS—Dalton asserts that the State failed to meet its burden of proof because it introduced no evidence regarding his alleged violation of the terms and conditions of probation. The State counters that there was sufficient evidence to revoke Dalton's probation even though it was given in an informal manner.

CONCLUSION—An evidentiary hearing was not conducted as required by law thereby violating Dalton's due process rights.

The legislature has obligingly provided us with the procedure to be followed in order to revoke probation. IC 35–38–2–3 [3] states in pertinent part:

"(c) The court shall conduct a hearing concerning the alleged violation. . . .

.    .    .    .    .

(d) The state must prove the violation by a preponderance of the evidence. The evidence shall be presented in open court. The person is entitled to confrontation, cross-examination, and representation by counsel."

No mystery here. An *evidentiary* proceeding must be conducted prior to the revocation of probation. Also, the United States Supreme Court has favored us with

---

1. Ind.Code 9–11–2–2 (1988).

2. Ind.Code 9–11–2–1 (1988).

3. IC 35–38–2–3 was amended by Pub.L. No. 67–1990, which reordered and redesignated certain subsections and added a new subsection (h). The text of the cited subsections remains the same but now appear as subsections (d) and (e).

the conclusion that because a probation revocation results in a loss of liberty, the probationer must be given certain due process rights before his probation may be revoked. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656. In *Gagnon,* the Court determined that a probationer is entitled to the same due process rights as a parolee, which rights were enunciated by the Court in *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484.

In *Morrissey,* the Court outlined those minimum requirements of due process as including:

"(a) written notice of the claimed violations of parole;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole."

*Id.* at 489, 92 S.Ct. at 2604.

And what happened in the case before us? A tête à tête occurred in front of the bench. The record shows five people were present in court: Dalton, his attorney, the prosecutor, a probation officer, and the trial judge. The "hearing" consisted of a conversation between these parties. The State introduced no witnesses to meet its burden of proving the allegations by a preponderance of the evidence. *See* IC 35–38–2–3(e). There is nothing to indicate that Dalton was afforded the opportunity to cross-examine the State's "witnesses" or to present evidence on his behalf. The closest the hearing came to an evidentiary proceed-

ing was when the trial judge called Dalton to the stand, swore him in as a witness, and asked him his name, how old he was, and where he worked. *Record* at 69, 73. At this point the trial judge resumed asking questions of the attorneys and the probation officer. Satisfied Dalton had indeed violated the terms of his probation, the trial judge turned to lecture the defendant informing him his probation would be revoked. *Record* at 74–76.

The law relating to the conduct of revocation proceedings is not new. *Gagnon* was decided in 1973, *Morrissey* in 1972, and IC 35–38–2–3 has required an *evidentiary* hearing since 1983.[4] Also in 1983, this district wrote *Gee v. State* (1983), Ind.App., 454 N.E.2d 1265, in which informal proceedings of the type held in this case were criticized. *Id.* at 1267, n. 6.

In view of what happened here, it is apparent that Dalton's probation was revoked without the court first holding an evidentiary proceeding as mandated by law. We can only conclude that the failure to hold such an evidentiary hearing violated Dalton's due process rights and constitutes fundamental error, requiring reversal of the trial court's judgment. *See Morrissey, supra; Gagnon, supra.*

Judgment reversed and remanded for proceedings consistent with this opinion.

SHIELDS, P.J., concurs.

STATON, J., concurs.

---

**4.** The requirement that a "hearing" be held prior to the revocation of probation dates back to 1927. *See* 1927 Ind.Acts, ch. 210, § 3, p. 594. In 1983 this was changed to an "evidentiary hearing." *See* 1983 Ind.Acts Pub.L. No. 311–1983.